Um, we're gonna move on to our second and last case. Sears versus Roberts. Good morning. Um, Mr Murphy and Mr Um, Mr Murphy, uh, will you start for us, please? Yes, Your Honor. And may it please the court. Logan Murphy for Terry Sears. And unless the panel has an objection, I'd like to start with the jurisdictional question that the court posed. Well, that that was posed by me. And I may be I may have misread your brief. I thought you were really attacking the new trial motion. But it does appear that on on second look, you're just you're attacking the final judgment. So So what you're really attacking is the decision to have the shackles and the courts and the and serves present, even though your client had not made any record at trial about that. And and and if we evaluated on that that ground, you can we can reach that issue. Uh, you know, and the appeal from the final judgment and and we can also reach the testimony issue about, uh, in the appeal from the final judgment without without regard to the motion for any trial is. Is that right? I think that is right. Although I do think Mr Sears is amended. Notice of appeal does, in fact, capture the order denying the motion for new trial. This court has to liberally construe if there's a notice intent to appeal a particular order, and there's no prejudice and the athletes in this case have wasn't counsel. Wasn't he specifically asked as a follow up? Hey, what are you appealing? Since he referenced an October 2nd order that didn't exist, and he specifically wrote back and said, No, no, no, I'm only appealing the final judgment, right? He did. And the answer to the jurisdictional question, Judge Luck. But I do think it's an inferential leap for a pro se party to think that a pro se party understands the difference between a final judgment and an order denying the motion for new trial. That final judgment. I were pretty are remit. Our jurisdictional question was pretty clear. It wasn't written in in the sort of legalese that you see sometimes with these. We just asked, Hey, what are you appealing? Are you appealing the final judgment, the notice or the new trial order or both? We gave him the option, and he wrote back and said, No, no, no, I'm only appealing the final judgment. I mean, he did. He did. You gotta hold on that, don't we? I don't think so, Your Honor, because I think that the notice of the amended dose of feel has to be as liberally construed as possible in this instance, and the jurisdictional question could have been construed by Mr Sears. It's just a question about the date on the final judgment. And in fact, if you look at the amended notice of appeal on the notice of appeal that he filed, he's using a form that's provided to him that only says final judgment. There's no blank for him to enter a council. Let's let's let's skin the cat another way in your issues. You don't raise any issues, I think very wisely regarding any error with the new trial order. You only raise issues regarding the final judgment. So I have a pro se individual who when question says specifically, I'm only appealing the final judgment and a represented parties issues that are only directed to the final judgment. How can I look at this any other way than as an appeal of the final judgment? I think that's a fair way to look at the issues that are presented in this order. So let's so let's go there. Tell me which ones. Tell me which issue you think is the best for reversal. I think we should start with the courtroom security measures, your honor. And before we do, I do need to say that we don't know if the shackling was even visible to the jury. We don't, your honor. But the due process concerns in the measures that have been imposed by this court have been imposed in cases where the shackles were in fact hidden in the Durham case. The stun belt was hidden in Wilson, the unpublished case. The shackles were hidden. And in this court's decision last year and more, it appears from the opinion that the shackles were also hidden in that case. But we've also said in everyone, including in Mays, that that not Durham Durham is a bit of a different thing when we're talking about a stun belt, but that it's completely harmless, that there's no harm at all, where the jury can't see it. And there's no record at all that the jury see it. In fact, the record, if anything supports the inference, they didn't see it because the court excused the jury for when the defendant or when the plaintiff was going up to the witness stand so that the jury wouldn't see it at the request of the plaintiff. So how can it be any harm to you, even if there is error, even if the court didn't do the findings that it should have done? That's right, Your Honor, the court has has said that there's no inherent prejudice to that. But it's not just the shackling. It's also the coterie of guards that were sitting directly behind Mr. Sears in the courtroom. Okay, so before before we leave that coterie of guards is a different issue or sub issue. You don't you don't have any decision from us or the sprinkler in a case where you can't see the shackles that found that there was an abuse of discretion or error or that reversed the case. Do you know your honor? Okay, but we do have cases saying, including more, including Terry O. From the Fifth Circuit, that when hidden shackles are used or shackles because it's unclear whether they're hidden interior, that the processes that have been put in place by deck by Holbrook by this court's decision 45 years ago, Ontario and up through last year and more must be applied when any restrictive security measures are imposed. And the question Yes, we can move past whether those security measures were imposed. And was this harmless? Does that does this affect Mr Sears is substantial rights? And the answer is yes, it affected his right to a fair trial. It affected his right to participate. How did having shackles affect his right to a fair trial? It interfered. If the jury didn't see them, your honor, it's not just again. I think it has to be put on both the shackles and the guard sitting directly behind him. No, it doesn't. We can take up the shackles if we want to. Yes, your honor. And as tackles well, maybe not. Maybe you can see that the shackles standing along would not make any difference. I would concede that there's no case that said that the hidden shackles by themselves would be. That's not the question. I asked Council. I asked how could it deprive him of a fair trial to have shackles on if the jury didn't see it? There is no precedent. That was my question. A few back. You're correct, your honor. There is no precedent saying that it would be harmful to him in that instance. So my question now, my question now is how could it deprive him of a fair trial if the jury couldn't see it? Yes, your honor. To answer you, it couldn't based on it couldn't. This court, however, in Durham talked about a stun belt that the court that the jury could not see. Yeah. And as I recall, Judge Joe Flats Penny, I think it was said that he was so frightened that he might be stunned and shocked that he couldn't focus on the trial. Now, I don't think anybody is so frightened by shackles, particularly a prisoner that he can't focus on the trial and communicate with his attorney. Yes, your honor. That was part of Judge Joe Flats opinion. But the opinion also discussed the prospect of the jury seeing the restrictive security measures that were imposed in that case. And that prospect, combined with all the other situations in Durham, which I admit are unique because it involved a new security device that was being imposed for the first time without fact finding by the court. The court did discuss that the mere prospect that the jury could see those shackles and that the party might not be able to participate fully as another person would in the trial. But the counsel, the counsel in those cases, there was a record of that. In other words, counsel said, here's the situation and here's why it impedes what we are trying to do. As best as I read the colloquy here, when the objection was made, there's no inference that, hey, my client isn't able to come over and whisper to me or to in some way impede what I am doing and what he needs to do in the preparation and presentation of this case. Am I missing something in that? No, your honor. Those specific reasons aren't stated on the record, right? And that seems to be problematic, right? I mean, how is the court supposed to weigh these things if it's not presented to them in any way? We don't just assume them to be the case. There's plenty of situations where shackles have set up the right way would have absolutely no effect at all on one's presentation. It is fact specific and fact dependent, right? Indeed, it is, your honor. And I think that that's why the guards sitting directly behind him are so problematic and why the court not giving Mr. Sears's trial counsel the opportunity to explain why they would be problematic. The Supreme Court essentially said, though, that guards in a courtroom are not inherently prejudicial. I understand the court has said it went on to say, especially if they are further away. But but that's the first part of that statement still stands. It's not an inherently prejudicial thing to have guards around. And in fact, at least in the habeas context, we've said that I'll use your word a coterie of about eight guards that is following a pro se litigant up and down and around a courtroom was not so prejudicial such that it violated any any due process rights of the defendant. How could we find that here in a civil context where it was nothing like that was described in the spiving case? Your honor, in Holbrook, the court did say that it wasn't inherently prejudicial, but it also said that you have to take it on a case by case approach, and they may create the impression that the party is dangerous, untrustworthy, aggressive. And in this case, where it's a swearing contest, a credibility contest between two parties about the use of force used on that party, then it's particularly concerning when the trial court doesn't state on the record the reasons for allowing the guards to sit directly behind the defendant. I guess it's just hard for me to see what the what the substantial differences such that it reaches constitutional implications if guards are sitting in the front bench of the gallery, or in the seats right in front of the bar that separates the gallery from the well, which seems to be what it is here. So in other words, behind but in the well, or behind but in the first row of the gallery. How is that of constitutional import such that in a civil case we have to reverse? I have trouble understanding how that compels reversal based on the record that we have. Two answers to that, your honor. First, I don't know if the record does demonstrate exactly where they're sitting and in the well of... Well, that hurts you, not helps you. Yes, your honor, it does. You're correct, because they could be sitting right in front of the gallery, but guards sitting in the gallery are more apt to be construed as part of the courtroom drama, to use the words of Holbrooke. But when they're sitting directly behind the defendant, defendant, or I'm sorry, behind the plaintiff, a party in a case based on the use of force, who are, who will want to discuss issues with counsel, who will want to participate in the case, it could cause concerns about both the appearance of untrustworthiness, especially when the court doesn't state on the record the reasons for imposing those security measures, but also chilling the ability to communicate with counsel, and that's the main concern. And I do admit, Judge Luck, there is no evidence in the record of the court of the Mr. Sears' trial counsel saying, your honor, they may be able to overhear us. But still, that's a significant constitutional concern if a party is not able to communicate. Does it matter? Does it matter that it's a civil trial and that we've never extended DEC to the civil context? This is not a context where there's any presumption of innocence. The concerns of due process in the criminal context to me seem to be far weightier with security measures than here, where the jury would already understand. Obviously, we have a prisoner who has already had their presumption of innocence removed. And two answers to that, Chief Judge Pryor, and then I'll wrap up. The first is that the Supreme Court has said that due process rights protect the right to an impartial trial in civil cases as well, larger versus showers. But second, this court should apply those rules to civil cases, as all the courts that have been in the context of the Fifth Amendment have. Yeah, I'm just not sure they're right. Yes, your honor, I think that would be, it's a difficult question to determine whether it applies. Let me ask you this. Let's assume for the moment a pro se litigant is appointed counsel at pro se litigants request. And during the course of representation, pro se counsel never once communicates with their client. Never once. Doesn't call him, doesn't write him, doesn't talk to him during trial, doesn't say a word to the guy, but does everything else he's supposed to do. Would that create an effective representation issue in any way that has constitutional import? No. Then how would interfering with communication with counsel ever reach in a civil case, a constitutional issue ever? Well, other courts have found that it does. Except for the fifth. Including, I'm sorry, your honor. Except for the Fifth Circuit, right? The Fifth Circuit's gone the other way on that. Yes, your honor. But even in, even in this court's decision in Durham, it's not directly on that point. And of course, that's a criminal case. But it did infringe the party's ability to participate in trial. Thank you. You've saved some time for rebuttal, Ms. Durham. Good morning, your honors. Shirley Durham appearing on behalf of appellees Vernia Roberts, Felicia Dexter, Jeffrey Hart and David Prince. And I will deal directly with the issue of security in the courtroom, if it's okay with the court. Yes. That's all we've talked about this morning, I think. Yes, your honor. The Supreme Court has indicated that the issue of security in the courtroom should be decided on a case by case basis. The judge in this the plaintiff in this in the case was a prisoner that she was going to let the guards decide how they want to position themselves in the courtroom. And they were not positioned directly behind a pallet in this case. We don't know that from the record. Do we? I mean, we have to make our decision based on what the record says. The record doesn't tell us that, does it? I thought the record indicated that they were in the gallery. I don't know what you tell me what is the record? And where exactly? What do we know from the record? That's what matters. Well, they weren't seated at council table with I don't think there's any argument that they were. But I was under the impression that it just wasn't clear from the record exactly where they were situated. Okay, that your honor, that might be clear. I might be just remembering that. And confusing it with the record. But a pallet wasn't seated. They were seated at council table with a pallet. But the judge indicated that she was going to let the correctional officers decide how they wanted to be seated in the courtroom. A pallet, the facts of this case and the facts before the court were a pallet was known as a violent inmate. The case before the court involved the use of violence. And there was a that a pallet was a violent inmate, they stipulated to that. So that just wasn't a counsel. I guess part of my concern is that as I understand our case law, at least with regard to whether it's error or not, the trial court is required to make findings at the time, based on whatever factors that are before the trial court at the time that the security measure is imposed. So here, the objection was made before trial started. The things that you're talking about came out during the course of the trial. In other words, after the trial court had an opportunity to hear the trial. But before that, the trial court didn't hear that stipulation that you're talking about. I'm not sure that the trial court even knew most of the facts of the trial before the trial started. And certainly, I don't think that the trial court referenced as criminal history and the violent nature of this any of the things that you're talking about that would have made sense to maybe mentioned. So what do we make of that, at least with regard to whether it's error? Well, as far as it being error, you're on to join the trial, that there was testimony to the jurors about this, and they would have been aware of that the fact that the inmate was violent. So the fact that he had on shackles or the guards were her around him would not have prejudiced him other than the testimony that came out during the case. I probably tend to I probably tend to agree with you on prejudice. I think we talked about some of that with your with your opposing counsel here. But my question is directed more towards the error part, not the not the harmless part. Again, as I understand our test, a trial court has to make findings at the time that the security measure is imposed based on whatever factors that are there. And then hear argument or objections from the parties. What factors did the court consider at the time it was imposed before the trial started? And what findings that the court make? The court, the court made a finding that she was going to let the the corrections officers guard him as they thought best because he was a prisoner. Haven't we haven't we said that you can't just farm that out to the marshals. In other words, you can't just farm out security to whatever someone else thinks it is, it has to be an independent judgment of the court to decide what security measures are appropriate in any given circumstance, right? Yes, Your Honor, that is correct. But the court was aware of certain things that there had been a motion in Lemony also regarding Mr. Sears criminal history. She was aware that he was a violent offender. And she was aware because that came up in the motion in Lemony, that this was this case was about violence, which is why I argue that his criminal history should come in because it was important to the case, because the the appellants were aware of the fact that we were dealing with a violent inmate, except that the trial court counsel never really says that what the trial court says, and I'm looking at docket entry 302, page eight of the record where the motion was made, the trial court, essentially, I won't read the whole thing, but essentially references the Epstein case, I guess it just happened, the suicide just happened right around that. So references, the suicide says, this just happened. And if they think they need that many people here, then I'm not really going to tell them one people or one person or two person. And then, you know, they can sit there if they think so. And then she asked the marshal or the corrections officer, do you think you need three? Yes, we do. Okay, that's it. Let's move on. That's not really a finding on the things that you're talking about in terms of history of violence, knowledge that he was a four time convicted felon, knowledge that he got in this scuffle with the officers, all that came out later. And so I guess my question is what findings can we based on that record, do we not find that at least it was error based on the objection, it was made for not doing what the trial court was supposed to do, even though that error may may have been harmless under the facts of this case? Well, your honor, I think she made somewhat of a finding, she may not have made the findings that she was supposed to, she indicated why was that she was allowing them to sit and guard him in the manner that they thought necessary. And your honor, I do believe that the the motion in limine about his criminal history came before the objection to the guards. Council, we've we've proceeded on the assumption that we didn't know where they were sitting. But I think it's a fair influence from from the record, they were sitting immediately behind or directly behind them on the same page that Judge Luck was referring to page eight, it says, Miss Kerr, I would like to raise the issue before the jury comes in, in that we were unaware of that officers, three officers from the FDOT would be sitting directly behind the defendant in this case directly behind the defendant. We believe that three officers sitting directly behind Mr. Sears is highly prejudicial in this case. And then later, Miss Wick says, I understand your honor, is there any way that they could sit in the row behind instead of right behind? So it sounds like pretty clear to me, they're not sitting in the regular seats in the courtroom. Because otherwise, counsel's unchallenged comment that they were sitting right behind as opposed to in the row behind the defendant wouldn't make any sense. Yes, your honor. If she asked, could they move or sit behind? Is there any way to sit in the row behind instead of right behind? Okay, that wasn't clear to me about that was was I couldn't tell whether there were seats on the well side of the bar or whether that that reference was to to the row behind was to a second row behind the bar. I just ignore Is there any anything in that about the exact distance? But anything you can do to help me about that? I would appreciate it. So this is from memory, your honor. They they were not seated directly behind they were what would really be helpful is whether your memory is is based on something that you could point us to in the record. I'm not going to be able to find that quickly, your honor. Okay. I'm sorry. I can't. But she says directly behind but that doesn't give a distance. Okay. That does not imply the distance. Um, and there's no indication from council that your memory that they were sitting in front of the bar. Uh, my memory is that they were seated. They were directly they were behind the bar because council behind the bar. Yes, because councils, um, paperwork and things were directly behind them. Sure. Yeah. And there's no indication that the jurors would have seen the shackles because they were moved whenever plaintiff got ready to go testify. The jurors were sent out. The judge was cognizant of that. And there was testimony doing trial about shackles about how violent Mr. Sears was, there was a stipulation that they knew he was a violent inmate that he he fought with the guards. He fought with the correctional officers, just like the ones who guarded him in the courtroom. Additionally, when they went to handcuff him in this case, there was testimony that he told them, if you put those handcuffs on me, you're gonna have we're gonna have to fight. So all that is to be considered the jury heard all of this. And there's no way to show that, to indicate that anything that happened regarding him being guarded by these guards would have prejudiced him during the trial because the trial consisted of testimony about the use of force, force used by plaintiff, plaintiff being shackled, plaintiff being, appellate being handcuffed. There's no way to show that there was any prejudice in this case at all. You have anything else, Mr? Um, no, nothing further. Okay. Um, this one thing your honor, we would ask the court to affirm the district court's ruling. Absolutely. Um, good thing to remind us how you would like for us to rule. Mr Murphy, um, you've saved two minutes. Thank you, Your Honor. And just for the record, I I do believe that the port parts of the record that Judge Carnes pointed to are the only indications of the record discussing where they would have been sitting. Even in the motion for new trial, there's no for further detail about where they were sitting. But it is important that they were sitting behind him, no matter how far that distance is, because this was a the use of force and having extra guards sitting behind a party in a credibility contest about the use of force. You can't really say the distance doesn't matter. I mean, the Supreme Court explicitly stated that distance matters in the prejudice determination. The Supreme Court said that sitting in the gallery is part of the courtroom drama made it certain made it the fact in that case that it didn't matter. It was more like having officers is not inherently prejudicial, especially if the distance is further away, right? That's what they said. That's right. So the distance matters. And I guess the reason I asked that I'm not asking is just to be particular, but because there's this this gap in the record of somehow I agree with you. The record states directly behind. It seems to be behind in front of the gallery as opposed to behind in the gallery. But without knowing how far that distance is, how are we able to say that it even meets some sort of prejudice without even getting to be the harmless the harmless part? Yes, Judge Luck, and I think it's OK to be particular because I think it matters in this case, just like you're saying. The problem is not necessarily in the distance, though it is critical in the Supreme Court's analysis. But the problem is also in the district court's refusal to conduct a particularized inquiry in this case. And that's where the error lies. In this case, I understand your concern, Judge Luck, is does that error rise to a constitutional level? And I would ask the court to look to the Ninth Circuit's decision in Claiborne, where the court said it was plain error for a party to be shackled in a use a civil case about the use of force because it projected dangerousness and affected the equilibrium of credibility. Thank you. Thank you, Mr Murphy. Um, that's that's all we have for this morning. We have your case and we'll be in recess until tomorrow morning. Have a good day. Thank you.